**TRUST COMPANY OF OKLAHOMA,**
**Guardian of the Estate of Ellen Lea**
**Barker, a minor child, Appellee,**

v.

**STATE of Oklahoma, ex rel.**
**DEPARTMENT OF HUMAN**
**SERVICES, Appellant.**

**No. 74000.**

Supreme Court of Oklahoma.

Dec. 17, 1991.

Rehearing Denied March 4, 1992.

---

Charles Lee Waters, Gen. Counsel, Howard J. Pallotta, Asst. Gen. Counsel, Dept. of Human Services, Oklahoma City, for appellant.

Roland Tague, Groves & Tague, Oklahoma City, for appellee.

KAUGER, Justice.

A single issue of first impression is presented [1]—whether a trust, created for the primary purpose of providing nonmedical support and containing a provision allowing the trustee discretion to provide medical care if the beneficiary ceases to qualify for medical assistance programs,[2] is

---

**1.** The Department of Human Services does not allege on certiorari that distributions paid to Barker's mother rendered the minor child ineligible for medical benefits. Failure to raise the issue in the petition for certiorari is fatal to its consideration. *Bayly, Martin & Fay, Inc. v. Pickard,* 780 P.2d 1168, 1170 (Okla.1989).

**2.** The trust agreement provides in pertinent part:

"... A. Purposes: Grantor is creating this trust, and will transfer certain assets to the trust for the primary benefit of a five year old girl named Ellen Barker ('Ellen'), who was severely injured in an automobile accident in which an employee of grantor was allegedly

at fault. As a result of the accident, Ellen's spinal cord was damaged, leaving her permanently paralyzed from the neck down and unable to breath (sic) without the assistance of a respirator. Ellen has been hospitalized since the accident and will continue to be hospitalized or institutionalized in Oklahoma City for an indefinite period of time. Ellen (sic) medical needs have been provided for by the Oklahoma Department of Human Services; however, in addition to her medical needs, Ellen will need special care throughout her lifetime, in order for her to live as normal and productive a life as possible under these circumstances. The primary purpose of this trust, therefore, is to furnish Ellen, during her lifetime, with the nonmedical equipment,

an available resource for medical assistance eligibility purposes.[3] We find that a trust, created for the primary purpose of providing nonmedical support and containing a provision allowing the trustee discretion to provide medical care if the beneficiary ceases to qualify for medical assistance programs, is not an "available resource" under 42 U.S.C. § 1396a(a)(17)(B) (Supp.1990)[4] or a "liquid resource in hand" within the meaning of DHS Manual § 1063.212 (11/1/86)[5] for medical eligibility purposes. The medical assistance case is reinstated from the date of termination subject to recertification as provided by the applicable program regulations.

## FACTS

Ellen Lea Barker (Barker/beneficiary/minor child), is an Oklahoma resident. On September 20, 1980, she and her family were visiting in Arizona when their car was struck by a bus operated by the Ganado Public School District No. 19 (Ganado School District/settlor). Barker's injuries caused permanent paralysis from the neck down. In 1981, the minor child was transferred to Oklahoma Children's Memorial Hospital where she remained until June, 1986. Upon her dismissal, she moved home. Barker continues to use a ventilator, and she requires nursing assistance and other specialized medical equipment.

Barker's mother filed suit against the Ganado School District in Arizona (Arizona suit/action) on the minor child's behalf. During the first six months that Barker was hospitalized in Oklahoma, she incurred approximately $160,000.00 in medical expenses. In an effort to obtain reimbursement, the appellant, Oklahoma Department of Human Services (Department of Human Services), filed a lien against any proceeds

care, education, training, rehabilitation, entertainment, transportation, or assistance which she will need to assure her of as natural and pleasant a life as is possible in her condition. If, for any reason, Ellen ceases to qualify for medical assistance, then the trustee may in its discretion, also provide any medical assistance which Ellen may require...."

3. From 1981 to March, 1986, Barker received medicaid benefits through Title XIX—Grants to States for Medical Assistance Programs, 42 U.S.C. § 1396 et seq. (1984). Medical benefits were provided through the Oklahoma Crippled Children's Act (Crippled Children's Act/Program), 10 O.S.1981 § 175.1, et seq. from March 1986 until June 30, 1987. Under both programs, an applicant may hold a maximum of $1,800.00 in available resources to qualify for medical services. DHS Manual § 1022.22 (Reissued 11/1/86) provides in pertinent part:

"*Maximum Capital Resources. ...* Appendix C–2 shows the maximum capital resources for the medically needy and is used in determining eligibility for Title XIX...."

DHS Manual § 1063.212 (11/1/86) provides in pertinent part:

"*Consideration of Resources for CCP Eligibility.* Appendix C–2 is used to determine resource eligibility for CCP. Eligibility for CCP is determined only after categorically and medically needy maximum reserves are exceeded. The same procedures for determining resources are used for both Title XIX and CCP (see Section 1020).

Only *liquid* resources in hand during the month(s) of services are considered in determining CCP eligibility. *Non-liquid* resources are disregarded for CCP eligibility purposes. *Liquid resources* are defined as those resources that can be readily converted to cash. The following are considered liquid resources:
Cash, savings accounts, checking accounts
Savings certificates (C.D.'s)
Stocks, bonds
Trust funds
Gifts, inheritances
Insurance settlements ...."

Medical Assistance Standards—Medically Needy—Appendix C–2 provides in pertinent part:

"... II. *Capital Resources.* Maximum allowable in available capital resources according to family size:

Size of Family

| 1 person (either adult or child) | $1800.00 cash resources or equivalent ...." |

4. Title 42 U.S.C. § 1396a (Supp.1990) provides in pertinent part:

"**(a) Contents**
A state plan for medical assistance must—... (17) ... (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient ...."

5. DHS Manual § 1063.212 (11/1/86), see note 3, supra.

which might be collected in the Arizona suit.[6] On May 18, 1981, the Arizona court entered an order approving the settlement of Barker's claim. Pursuant to the settlement, $818,940.00 were paid to the appellee, Trust Company of Oklahoma (Trust Company/trustee),[7] to be held pursuant to a trust agreement reviewed and approved by the Arizona court. On May 22, 1981, the Trust Company filed an application to approve inventory, disbursement and the trust agreement in Oklahoma County. The application provided that: 1) the trustee had received $818,940.00 to be held for Barker; and 2) the settlement was subject to a lien in favor of the Department of Human Services. The Trust Company requested an order allowing disbursement of $200,000.00 to the Department of Human Services in return for a full and complete disclaimer of any further or future interest in the trust estate. On the same date, the district court entered an order signed by the Department of Human Services' counsel approving the inventory of the trust and the trust agreement. The order also approved the disbursement to the Department of Human Services "in full and complete satisfaction and accord as to any lienable interest held by said Department in the funds arising from the litigation in Arizona." [8]

From 1981 to March, 1986, Barker received medicaid benefits through Title XIX—Grants to States for Medical Assistance Programs (Medicaid), 42 U.S.C. § 1396 (1984) et seq. Medical benefits were provided through the Oklahoma Crippled Children's Act (Crippled Children's Act/Program), 10 O.S.1981 § 175.1, et seq. from March 1986 until June 30, 1987. Under both programs, an applicant may hold a

6. Title 56 O.S.1981 § 200 provides in pertinent part:

"(a) Whenever the Department of Human Services pays medical expenses for or on behalf of a person who has been injured, or who has suffered a disease, as a result of the negligence or act of another person, the Department shall, if such injured or diseased person asserts or maintains a claim against such other person or tortfeasor for damages on account of such injury or disease, have a lien to the extent of the amount so paid upon that part going or belonging to such injured or diseased person of any recovery or sum had or collected or to be collected by such injured or diseased person, or by his heirs, personal representative or next of kin in case of his death, whether by judgment or by settlement or compromise ... "

Section 200 was amended in 1986. The quoted portion of § 200 now appears in subsections (A) and (D) of the revised statute. However, the language remains substantially similar to that found in the 1981 version.

7. Title 12 O.S.1981 § 83 provides in pertinent part:

"Monies recovered in any court proceeding by a next friend or guardian ad litem for or on behalf of a person who is less than eighteen (18) years of age in excess of One Thousand Dollars ($1,000.00) over sums sufficient for paying costs and expenses including medical bills and attorney's fees shall, by order of the court, be deposited in a banking or savings and loan institution approved by the court. Until the person becomes eighteen (18) years of age, withdrawals of monies from such account or accounts shall be solely pursuant to order of the court made in the case in which recovery was had. When an application for the order is made by a person who is not represented by an attorney-at-law, the judge of the court shall prepare the order."

Section 83 was amended in 1984 to allow the use of annuities and structured settlements. The language of the 1981 version of § 83 remains intact in the revised statute.

8. Because the Barker trust fund is not an available resource for medical eligibility purposes, we need not determine whether the facts and circumstances—Department of Human Services' participation in the settlement process—implicate a prevailing public interest which will except it from the general rule precluding the use of estoppel against the government. *Spencer Dev. Co. v. Independent School Dist. No. I-89,* 741 P.2d 477, 481 (Okla.1987); *Burdick v. Independent School Dist. No. 52,* 702 P.2d 48, 53 (Okla.1985). Noting that the doctrine of estoppel against the government has been decisively eroded in recent years, a federal district court found that estoppel would apply against the government in a situation in which an applicant for benefits was given wrong information for the purpose of filing an application. *Coty v. Harris,* 495 F.Supp. 452, 454 (W.D.Va.1980). See also, Annot., "Modern Status of Applicability of Doctrine of Estoppel Against Federal

maximum of $1,800.00 in available resources to qualify for medical services.[9] When Barker's mother filed a re-application for benefits on March 14, 1985, she reported the existence of the trust. Medical coverage was switched from Title XIX to the Crippled Children's Program because of a belief that the trust made Barker ineligible for Medicaid. In 1985, the trust contained approximately $1,000,000.00. By June 30, 1987, the trust corpus consisted of approximately 1.2 million dollars.

On May 29, 1987, the Department of Human Services notified the Trust Company that Barker's medical assistance benefits would be terminated effective June 30.[10] The basis for termination was a determination that the trust fund constituted an available resource for purposes of the Crippled Children's Act.[11] The Trust Company requested an administrative hearing before the Appeals Unit to review the denial of benefits on June 29, 1987. A hearing was conducted before an administrative law judge on September 10, 1987. On February 12, 1988, the administrative law judge sustained the Department of Human Services' termination of benefits.[12]

The Trust Company received the decision of the appeals unit on February 19 and filed a petition with the district court on March 14 pursuant to 56 O.S.Supp.1985 § 168(D).[13] After hearing argument and considering the parties' briefs, the trial court ruled from the bench in the Trust Company's favor.[14] The trial court found that the decision of the Appeals Unit was clearly erroneous in light of the evidence on estoppel and ordered the reinstatement of medical benefits. The Department of Human Services appealed pursuant to 75 O.S.1981 § 323.[15] Although the Court of Appeals recognized that the 1981 settlement agreement was meant to require payment of medical expenses by the Department of Human Services and to exclude the trust as an available resource, it reversed the trial court. The Court of Appeals found that because the Department of Human Services' counsel was without authority to enter the settlement agreement, it could not be estopped by its agent's actions. On September 17, 1991, we granted certiorari to address a question of first impression in Oklahoma—whether a trust, created for the primary purpose of providing nonmedical support and containing a provision allowing the trustee discretion to provide medical care if the beneficiary ceases to qualify for medical assistance programs, is an available resource for medical eligibility purposes.

Government & Its Agencies," 27 A.L.R.Fed. 702, 719–722 (1976).

9. DHS Manual § 1022.22 (Reissued 11/1/86), see note 3, supra; DHS Manual § 1063.212 (11/1/86), see note 3, supra; Medical Assistance Standards—Medically Needy—Appendix C–2, see note 3, supra.

10. Some of Barker's expenses were paid from the Crippled Children's Program from August 28, 1986 to January 1, 1987 pursuant to an agreement between the Trust Company and Human Services.

11. DHS Manual § 1063.212 (11/1/86), see note 3, supra.

12. The delay in the issuance of a decision was predicated on a request by the Trust Company for the Department of Human Services' records concerning the 1981 settlement negotiations. No record of these negotiations was ever located by the Department of Human Services.

13. Title 56 O.S.Supp.1985 § 168(D) provides:
   "Any person aggrieved by any final decision of the Department may petition the district court in which the recipient resides for a judicial review of the decision pursuant to the provisions of Sections 318 through 323 of Title 75 of the Oklahoma Statutes. A copy of the petition shall be served by mail upon the General Counsel of the Department."

14. The trial court's decision is also found in the journal entry of judgment dated August 22, 1989, and filed on October 5, 1989.

15. Title 75 O.S.1981 § 323 provides:
   "An aggrieved party, or the agency, without any motion for a new trial, may secure a review of any final judgment of a district or superior court under this act by appeal to the Supreme Court. Such appeal shall be taken in the manner and time provided by law for appeal to the Supreme Court from the district court in civil actions. An agency taking an appeal shall not be required to give bond."

A TRUST, CREATED FOR THE PRI-
MARY PURPOSE OF PROVIDING
NONMEDICAL SUPPORT AND
CONTAINING A PROVISION AL-
LOWING THE TRUSTEE DISCRE-
TION TO PROVIDE MEDICAL CARE
IF THE BENEFICIARY CEASES TO
QUALIFY FOR MEDICAL ASSIST-
ANCE PROGRAMS, IS NOT AN
"AVAILABLE RESOURCE" UNDER
42 U.S.C. § 1396a(a)(17)(B) (Supp.1990)
or A "LIQUID RESOURCE IN
HAND" WITHIN THE MEANING OF
DHS MANUAL § 1063.212 (11/1/86)
FOR MEDICAL ELIGIBILITY PUR-
POSES.

■ The Trust Company asserts that the trust is not an available resource for medical assistance eligibility purposes. The Department of Human Services characterizes this issue as "interesting" but argues that a finding that it is not bound by estoppel moots the question. Without deciding the estoppel issue, we disagree. If the Department of Human Services was not estopped by the actions of its agent in the settlement proceedings,[16] Barker may still qualify for assistance if she meets the resource requirements under either Medicaid or the Crippled Children's Act.

Medicaid was enacted in 1965 as a cooperative federal-state endeavor designed to provide health care to needy individuals.[17] States are not required to participate in the program. However, once a state chooses to adopt the program, it must create a plan conforming with the requirements of the federal statute, 42 U.S.C. § 1396 et seq., and related federal regulations.[18] Participating states must provide medicaid coverage to the categorically needy.[19] The categorically needy are those persons eligible for cash assistance under either of two programs: Supplemental Security Income for the Aged, Blind, and Disabled (SSI), 42 U.S.C. § 1381 et seq. or Aid to Families with Dependent Children (AFDC), 42 U.S.C. § 601 et seq. Because she receives SSI benefits, Barker is classified as categorically needy.[20]

**16.** See, *Spencer Dev. Co. v. Independent School Dist. No. I-89,* see note 8, supra; *Burdick v. Independent School Dist. No. 52,* see note 8. See also, *Coty v. Harris,* note 8, supra; Annot., "Modern Status of Applicability of Doctrine of Estoppel Against Federal Government & Its Agencies," note 8, supra and accompanying discussion.

**17.** *Atkins v. Rivera,* 477 U.S. 154, 156, 106 S.Ct. 2456, 2458, 91 L.Ed.2d 131, 137 (1986); *Schweiker v. Gray Panthers,* 453 U.S. 34, 36, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460, 465 (1981); Title 42 U.S.C. § 1396 (Supp.1990) provides:
"For the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independent or self-care, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this subchapter. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for medical assistance."

**18.** *Schweiker v. Gray Panthers,* see note 17, 453 U.S. at 37, 101 S.Ct. at 2637, supra; *Washington*

*v. Bowen,* 815 F.2d 549, 552 (9th Cir.1987); 42 U.S.C. § 1396 (Supp.1990), see note 17, supra; E. Brantley, "Use of the Trust to Manage Property of the Elderly or Disabled," 42 Ark.L.Rev. 568, 619 (1989).

**19.** *Atkins v. Rivera,* see note 17, supra; Title 42 U.S.C. § 1396a(a)(10)(A)(i) (Supp.1990) provides in pertinent part:
**(a) Contents**
"... A state plan for medical assistance must—
(10) provide—
(A) for marking medical assistance available, including at least the care and services listed in paragraphs (1) through (5), (17) and (21) of section 1396d(a) of this title, to—
"(i) all individuals—
... (II) with respect to whom supplemental security income benefits are being paid under subchapter XVI of this chapter or who are qualified severely impaired individuals (as defined in section 1396d(q) of this title)...."

**20.** States may also provide assistance to the medically needy. The medically needy become eligible for medicaid benefits when their income and assets are reduced by incurred medical expenses that reduce their income and assets below certain established levels. *Ramsey v. Department of Human Services,* 301 Ark. 285, 783 S.W.2d 361–62 (1990).

■ The Medicaid Act requires the states to base assessments of financial need only on resources *available* to the applicant or recipient. The Secretary of Health and Human Services (Secretary) is authorized to promulgate rules to determine whether resources are available within the meaning of 42 U.S.C. § 1396a(a)(17)(B) (Supp.1990).[21] Because Medicaid eligibility is determined using the same methodology for the treatment of resources as is applicable to the SSI program,[22] SSI regulations are instructive. Federal regulations defining resources for SSI provide that a resource may be cash, liquid assets, or other property rights. Trust funds are not listed as available resources. If a property right cannot be liquidated, it is not considered a resource.[23]

■ In order to implement binding federal guidelines governing Medicaid,[24] the Department of Human Services promulgated DHS Manual § 1000 (11/1/86).[25] Section 1000 requires the Department of Human Services to make payments within the scope of Medicaid or the Crippled Children's Act. The standards for medical care and services are the same under both programs. DHS Manual § 1022.23 (11/1/86) defines available resources for purposes of Medicaid as those which are "in hand" or under the control of the individual for the period of certification.[26] Pursuant to DHS Manual § 1063.212 (11/1/86), the same procedures are used for determining resources under both Medicaid and the Crippled Children's Program. Section 1063.212 provides that only liquid resources in hand during the month of services are considered in determining eligibility for the Crippled Children's Program. Trust funds are included within the definition of liquid resources for purposes of the Crippled Chil-

---

**21.** *Schweiker v. Gray Panthers,* see note 17, 453 U.S. at 37, 101 S.Ct. at 2637, supra; *Clark v. Comm'r,* 209 Conn. 390, 551 A.2d 729, 733 (1988); Title 42 U.S.C. § 1396a(a)(17)(B) (Supp. 1990), see note 4, supra.

**22.** 42 C.F.R. § 435.700 (1990) provides in pertinent part:

"This subpart prescribes financial requirements for determining the eligibility of categorically needy individuals under Subparts B and C of this part. The requirements apply only to individuals who are not receiving AFDC, SSI, or an optional State supplement. The financial eligibility requirements of AFDC, SSI, or the State supplement apply to individuals receiving those payments. . . ."
*Miller v. Ibarra,* 746 F.Supp. 19, 26 (D.Colo. 1990); *Lang v. Commonwealth,* 515 Pa. 428, 528 A.2d 1335, 1339 (1987).

**23.** 20 C.F.R. § 416.120(a)(3) (1990) provides:

"**Resources** means cash or other liquid assets or any real or personal property that an individual owns and could convert to cash to be used for support and maintenance (see § 416.-1201(a))."
42 C.F.R. § 416.1201(a)(1) (1990) provides:
"**Resources; defined.** For purposes of this subpart L, resources means cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash to be used for his or her support and maintenance.

(1) If the individual has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource. If a property right cannot be liquidated, the property will not be considered a resource of the individual (or spouse)."

**24.** *Schweiker v. Gray Panthers,* see note 17, 453 U.S. at 37, 101 S.Ct. at 2637, supra; *Washington v. Bowen,* see note 18, supra; 42 U.S.C. § 1396 (Supp.1990), see note 17, supra; E. Brantley, "Use of the Trust to Manage Property of the Elderly or Disabled," see note 18, supra.

**25.** DHS Manual § 1000 (11/1/86) provides in pertinent part:

"The Department of Human Services (DHS) provides payment for medical services, within the scope of the Medicaid Program (which is also known as Medical Assistance and as Title XIX) or the Crippled Children's Program for persons under 21 years of age who meet the respective eligibility requirements for these programs. . . . The standards are the same for medical care and medical services provided or paid for by the Department, whether payment is made through the Crippled Children's Program or the Title XIX Program. . . ."

**26.** DHS Manual § 1022.23 (11/1/86) provides in pertinent part:

"*Determination of Eligibility for Title XIX Payments.* Available income and resources are those which are "in hand" or under the con-

dren's Program.[27] However, because federal law governs the availability of resources for purposes of Medicaid [28] and because under the DHS guidelines the same standards of availability apply for purposes of Medicaid and the Crippled Children's Program,[29] a determination of the availability of the instant trust under federal guidelines governs Barker's eligibility for medical assistance—*available resources in hand and liquid resources in hand must be assigned a definition consistent with* *that of available resources under the federal act.*

Relying upon pertinent federal and state statutes and regulations, the majority of jurisdictions which have considered the issue of the availability of a trust fund for medical eligibility purposes have found that the trusts are not available resources for the determination of a beneficiary's eligibility for medical assistance.[30] Courts in the minority [31] find that trust assets are available resources. These courts have refused

trol of the individual for the period of certification...."

**27.** DHS Manual § 1063.212 (11/1/86), see note 3, supra.

**28.** *Schweiker v. Gray Panthers,* see note 17, 453 U.S. at 37, 101 S.Ct. at 2637, supra; *Washington v. Bowen,* see note 18, supra; 42 U.S.C. § 1396 (Supp.1990), see note 17, supra; E. Brantley, "Use of the Trust to Manage Property of the Elderly or Disabled," see note 18, supra.

**29.** DHS Manual § 1063.212 (11/1/86), see note 3, supra.

**30.** Eight jurisdictions find that a trust is not an available resource for medical eligibility purposes. *Miller v. Ibarra,* see note 22 at 27, supra (Applying Colorado law and federal statute.); *Lang v. Commonwealth,* see note 22, 528 A.2d at 1345, supra [Prior to the Pennsylvania Supreme Court's determination in *Lang,* a lower court had held that trusts were available resources for medical eligibility purposes. *Stoudt v. Commonwealth,* 76 Pa.Commw. 576, 464 A.2d 665–66 (1983). Since the decision in *Lang,* the Commonwealth courts have split on the issue of availability. *Commonwealth Bank & Trust Co. v. Commonwealth,* 128 Pa.Commw. 528, 563 A.2d 1299, 1301 (1989) (Indicating that the decision in *Lang* applied only to recipients of funds under the Mental Health & Mental Retardation Act of 1966.); *Snyder v. Commonwealth,* 124 Pa.Commw. 511, 556 A.2d 31, 33 (1989) (Noting that the Pennsylvania Supreme Court's decision that the trust in *Lang* was not an available resource for medical eligibility purposes was independent of its determination that the trust had no legal duty to provide support to the beneficiary.).]; *Zeoli v. Comm'r of Social Serv.,* 179 Conn. 83, 425 A.2d 553, 559, 21 A.L.R.4th 718, 727–28 (1979); *Jansen v. Department of Public Welfare,* 201 Neb. 185, 266 N.W.2d 742, 745 (1978); *Kline v. Utah Dept. of Health,* 776 P.2d 57, 63 (Utah Ct.App.1989); *Lineback v. Stout,* 79 N.C.App. 292, 339 S.E.2d 103, 108 (1986); *Tidrow v. Director,* 688 S.W.2d 9, 13 (Mo.Ct.App.1985); *Hoelzer v. Blum,* 93 A.D.2d 605, 462 N.Y.S.2d 684, 690 (1983). See, Annot., "Eligibility for Welfare Benefits as Affected by Claimant's Status as Trust Beneficiary," 21 A.L.R.4th 729, 734–740 (1983).

On appeal, the Department of Human Services attempted to distinguish some of these rulings on the basis that they referred to medically needy recipients rather than to those included within the categorically needy definition. This distinction is not persuasive. The methodology employed to determine eligibility for services is the same for both groups. *Hogan v. Heckler,* 769 F.2d 886, 888 (1st Cir.1985); *Hession v. Illinois Dept. of Public Aid,* 129 Ill.2d 535, 136 Ill.Dec. 65, 68, 544 N.E.2d 751, 754 (1989); 42 U.S.C. § 1396a(a)(10)(C)(i) provides in pertinent part:

"... (T)hat if medical assistance is included for any group of individuals described in section 1396d(a) of this title who are not described in subparagraph (A) or (E), then—

(i) the plan must include a description .of ... the single standard to be employed in determining income and resource eligibility for all such groups, and the methodology to be employed in determining such eligibility shall be no more restrictive than the methodology which would be employed under the supplemental security program ... and which shall be no more restrictive than the methodology which would be employed under the appropriate State plan ...."

**31.** Two jurisdictions find that a trust fund is an available resource for medical eligibility purposes. *Matter of Welfare of K.S.,* 427 N.W.2d 653, 659–60 (Minn.1988); *Arkansas Dept. of Human Services v. Donis,* 280 Ark. 169, 655 S.W.2d 452, 454 (1983).

Other cases in which courts have found that a trust is an available resource are distinguishable from the facts presented here. In 42 U.S.C. § 1396a(k) (Supp.1990), Congress has prohibited the creation of medicaid qualifying trusts for the purpose of meeting medical eligibility requirements. Section 1396a(k) defines a medicaid qualifying trust as a non-testamentary trust created by an individual or the individual's spouse under which the individual is the beneficiary of all or part of the trust payments. Here, the settlor is not the beneficiary, Barker, but the tortfeasor, Ganado School District. 42 U.S.C. § 1396a(k) provides in pertinent part:

to interpret a settlor's intent to be that he/she wanted public support to be used as a vehicle for preserving trust assets.[32]

The courts holding that a trust is not an available resource give effect to the settlor's intent, expressed through the trust instrument. They recognize that a settlor may want to supplement rather than to supplant public financial assistance.[33] They reason that settlors attempting to provide for a handicapped person should not be required to either bankrupt estates or leave the disadvantaged party to the vagaries of public assistance programs.[34] Additionally, these courts have not been willing to find that trust assets are available resources for medical assistance purposes when to do so would authorize a rapid and total dissipation of a trust estate

intended to provide only supplementary benefits.[35]

■ Because, absent a conflict with a principle of law, interpretation of a trust's terms are controlled by the settlor's intent,[36] we find the reasoning of the majority persuasive. Here, the trust instrument provides that its primary purpose is to furnish Barker with **"nonmedical equipment, care, education, training, rehabilitation, entertainment, transportation, or assistance needed to assure her of as natural and pleasant a life as is possible in her condition."** The trustee is authorized to provide for medical expenses only if Barker ceases to qualify for public assistance.[37] Trust instruments are generally construed in favor of their beneficiaries.[38] If declara-

"Treatment of potential payments from Medicaid qualifying trusts

(1) In the case of a medicaid qualifying trust (described in paragraph (2)), the amounts from the trust deemed available to a grantor, for purposes of subsection (a)(17) of this section, is the maximum amount of payments that may be permitted under the terms of the trust to be distributed to the grantor, assuming the full exercise of discretion by the trustee or trustees for the distribution of the maximum amount to the grantor. For purposes of the previous sentence, the term 'grantor' means the individual referred to in paragraph (2).

(2) For purposes of this subsection, a 'medicaid qualifying trust' is a trust, or similar legal device, established (other than by will) by an individual (or an individual's spouse) under which the individual may be the beneficiary of all or part of the payments from the trust and the distribution of such payments is determined by one or more trustees who are permitted to exercise any discretion with respect to the distribution to the individual....

(4) The State may waive the application of this subsection with respect to an individual where the State determines that such application would work an undue hardship."
*Hall v. Malstrom*, 29 Wash.2d 746, 189 P.2d 471, 473 (1948); *Couch v. Director*, 795 S.W.2d 91, 94 (Mo.Ct.App.1990); *Hatcher v. Department of Health & Human Rehabilitative Serv.*, 545 So.2d 400, 402 (Fla.Dist.Ct.App.1989); *Cantor v. Department of Income Maintenance*, 12 Conn.App. 435, 531 A.2d 606–07 (1987); *Harrington v. Blum*, 117 Misc.2d 623, 458 N.Y.S.2d 864, 866 (1982).

**32.** *McNiff v. Olmstead*, 287 Minn. 40, 176 N.W.2d 888, 891 (1970).

**33.** *Miller v. Ibarra*, see note 22 at 27, supra; *Lang v. Commonwealth*, see note 22, 528 A.2d at 1345, supra; *Zeoli v. Commissioner of Social Serv.*, see note 30, 425 A.2d at 556, supra; *Lineback v. Stout*, see note 30, 339 S.E.2d at 108, supra; *Tidrow v. Director*, see note 30 at 14; *Hoelzer v. Blum*, see note 30, 462 N.Y.S.2d at 690, supra. See also, W. McGovern, Jr., *Wills, Trusts & Estates—Including Taxation & Future Interests*, ch. 8, p. 309 (West 1988); 2 Scott, *The Law of Trusts*, § 128.4, p. 354–55 (Little, Brown, & Co.1987); C. Mooney, "An Estate Plan to Supplement Public Assistance for Disabled Persons," 25 Ariz.L.Rev. 939, 967 (1983).

**34.** *Lang v. Commonwealth*, see note 22, 528 A.2d at 1345, supra.

**35.** *Tidrow v. Director*, see note 30 at 14, supra. A finding that the trust is liable for Barker's medical expenses would result in the trust being rapidly depleted. From September 1986 to September 1987, the trust expended $120,000.00 for Barker's medical expenses. If these expenses continue to be paid from trust assets, the trust will be depleted by the time Barker is twenty-one years old.

**36.** *In re Will of Dimick*, 531 P.2d 1027, 1030 (Okla.1975); *Hurst v. Kravis*, 333 P.2d 314, 318 (Okla.1958); Annot., "Propriety of Considering Beneficiary's Other Means Under Trust Provision Authorizing Invasion of Principal for Beneficiary's Support," 41 A.L.R.3d 255, 260 (1972).

**37.** See pertinent trust provision note 2, supra.

**38.** *Matter of Home–Stake Prod. Co. Deferred Compensation Trust*, 598 P.2d 1193, 1196 (Okla. 1979); *Harris Trust & Savings Bank v. Burlingame*, 200 Okla. 29, 190 P.2d 1017, 1019 (1948).

tions of trust are clear and susceptible of only one meaning, the provisions of the trust govern its construction.[39]

The trust instrument clearly indicates that its primary purpose is for nonmedical support. The trust was formed to provide those supplementary benefits not provided by public assistance. Requiring use of the trust assets until the income is depleted and the principal is reduced to $1,800.00 [40] benefits the State, not Barker, and would nullify the settlor's intent. We find that a trust, created for the primary purpose of providing nonmedical support and containing a provision allowing the trustee discretion to provide medical care if the beneficiary ceases to qualify for medical assistance programs, is not an "available resource" under 42 U.S.C. § 1396a(a)(17)(B) (Supp.1990) [41] or a "liquid resource in hand" within the meaning of DHS Manual § 1063.212 (11/1/86) [42] for medical assistance eligibility purposes.

## CONCLUSION

Economic reality demonstrates that the source of funds for public assistance programs is finite.[43] However, the principle of availability has served to prevent the States from attributing tangential sources of income or resources to an applicant for assistance.[44] The legislative history of § 1396a(a)(17)(B) indicates that the term "available" should be read as a limiting term. *Only those assets actually available to the applicant may be considered.* States may not over evaluate available re-

sources.[45] Here, the trust instrument clearly indicates that its resources are intended to supplement rather than to supplant public assistance to Barker.[46] The trust, created for the primary purpose of providing nonmedical support and containing a provision allowing the trustee discretion to provide medical care if the beneficiary ceases to qualify for medical assistance programs, is not an "available resource" under 42 U.S.C. § 1396a(a)(17)(B) (Supp.1990) or a "liquid resource in hand" within the meaning of DHS Manual § 1063.212 (11/1/86) for medical assistance eligibility purposes. The medical assistance case is reinstated from the date of termination subject to recertification as provided by the applicable program regulations.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF APPEALS VACATED; TRIAL COURT AFFIRMED.

HODGES, V.C.J., and SIMMS, DOOLIN and SUMMERS, JJ., concur.

ALMA WILSON, J., concurs in result.

OPALA, C.J., and HARGRAVE, J., dissent.

LAVENDER, J., not participating.

---

**39.** *Matter of Home–Stake Prod. Co. Deferred Compensation Trust,* see note 38, supra.

**40.** Medical Assistance Standards—Medically Needy—Appendix C–2, see note 3, supra.

**41.** Title 42 U.S.C. § 1396a(a)(17)(B) (Supp. 1990), see note 4, supra.

**42.** DHS Manual § 1063.212 (11/1/86), see note 5, supra.

**43.** *Coppola v. Fulton,* 809 P.2d 1291, 1297 (Okla. 1991).

**44.** *Clark v. Commissioner of Income Maintenance,* 209 Conn. 390, 551 A.2d 729, 736 (1988).

**45.** *State v. Bowen,* 815 F.2d 549, 554 (9th Cir. 1987); 1965 Code Cong. & Ad.News 1943, 2018.

**46.** *Miller v. Ibarra,* see note 22 at 27, supra; *Lang v. Commonwealth,* see note 22, 528 A.2d at 1345, supra; *Zeoli v. Commissioner of Social Serv.,* see note 30, 425 A.2d at 556, supra; *Lineback v. Stout,* see note 30, 339 S.E.2d at 108, supra; *Tidrow v. Director,* see note 30 at 14; *Hoelzer v. Blum,* see note 30, 462 N.Y.S.2d at 690, supra.