OPINION OF THE COURT
C. Raymond Radigan, J.
Is the income from a testamentary trust which the trustee is directed to expend for clothing, comforts and luxuries of the beneficiary, Paul Kemp, a resource available to pay the claim of New York State for the care and treatment furnished to the beneficiary in a State-operated intermediate care facility? That question poses the central issue in this proceeding. The secondary issue is whether the court has jurisdiction.
Paul Kemp is a patient residing in a facility operated by the Long Island Developmental Center which is a component of the New York State Office of Mental Retardation and Developmental Disabilities (OMRDD). He is also the income beneficiary of a trust created under the will of his mother, Frances Daubney. This proceeding by OMRDD to apply the income in payment for the care rendered to Paul is brought as a will construction proceeding pursuant to SCPA 1420. The State or, more specifically, its agency, OMRDD, in reality is seeking to enforce its rights as a creditor of the beneficiary, and as such is not a person interested in the estate, creditors being excluded by statute from the definition of "persons interested” (SCPA 103 [39]; 1420 [1]; Matter of Ross, 96 Misc 2d 463). Petitioner accordingly has no standing to pursue a will construction proceeding even though the resolution of the issue before the court may require ascertainment of the intent of the testatrix as expressed in her will. Substance, however, must prevail over form and the label attached to a proceeding is not controlling. Furthermore, this court is empowered to exercise any of the jurisdiction granted to it, notwithstanding that the jurisdiction sought to be exercised is or may be exercised in or incidental to a different proceeding (SCPA 202). In addition, under section 43.03 of the Mental Hygiene Law, a *122 patient residing in a facility operated by the Office of Mental Retardation and Developmental Disabilities and any fiduciary holding assets for him are made jointly and severally liable to the State for its fees for services rendered, and the State may proceed directly against a trustee of a trust created for the benefit of the patient to obtain reimbursement of its expenses for services rendered (Matter of Cooke, 181 Misc 748).
The will of Frances Daubney placed her entire estate in trust
"for the benefit of my son, Paul Kemp, presently residing at Suffolk State School, Melville, New York * * * for the following uses and purposes:
"(1) to invest and reinvest the same and to collect the * * * income * * * and * * * to expend the net balance of such income for clothing, comforts and luxuries for my son, Paul Kemp, as long as he shall live.
"(2) I also authorize and direct my trustee in her sole discretion to expend so much of the principal of the said trust fund as may be necessary for illness or other emergency effecting such child. Commitment to or residence in a state school, hospital, hostel or other facility * * * shall not be considered such illness or other emergency, and my trustee shall have no authority to invade principal for payment of living expenses or other routine costs for residence in such a facility.”
The last quoted paragraph insulates the principal of the trust fund from the claim of the State for reimbursement of the cost of care given to Paul (Matter of Escher, 52 NY2d 1006). In this proceeding the relief sought is limited to a request that the trustee turn over the income. The attorney for the trustee contends the issue is whether the Escher principle (which allows a trustee with discretionary powers to refuse to invade principal to pay for the cost of a governmental entitlement) is applicable to income as well.
The court agrees with the conclusion of the guardian ad litem that the trust, with respect to the dispensation of income, vests no discretion in the trustee. The language of the instrument directs the trustee to expend the income for Paul’s benefit, and that command is unambiguous. The will similarly is equally emphatic as to what purpose the income shall be applied, namely, for clothing, comforts and luxuries.
Respondent argues that the testatrix knew her estate could never pay for the extraordinary cost of care for her son, and *123 devised an estate plan to provide income for those items of need not provided by the State. The son was institutionalized during the testatrix’ lifetime without cost to her, and it is argued that the testatrix was fully aware of what was being provided by the State and what was not. She, accordingly, is claimed to have limited the expenditures of income to clothing, comforts and luxuries since the State under its entitlement program made no provision for their payment.
The guardian ad litem reports that petitioner is not providing luxuries to Paul within the natural meaning of that word and petitioner concedes this is so. The guardian further concluded that the State is also not providing "comforts” to Paul as that word is not synonymous with support and maintenance which is what the State is actually furnishing to Paul. Petitioner maintains that the word "comforts” encompasses "support and assistance” which it is undeniably furnishing.
The major asset of the trust is a residence in Bayville that is occupied by the trustee, Edna Ross, who is also a remainderman of 25% of the trust corpus. She pays rent to the trust that ranged from $4,720 a year in 1979 to $9,000 in 1987 but charged the trust with real estate taxes, utilities, insurance and repairs and maintenance. Over the same period, disbursement of trust income for Paul’s benefit averaged about $1,500 annually and included expenditures for clothing, shoes, dry cleaning, haircuts, and payments to the Paul Kemp luxury fund which is not otherwise identified. Furthermore, the major disbursement charged against Paul’s account comprised of travel and auto expenses of the trustee which averaged $930.28 in the seven-year period from 1981 to 1987 as compared to $118.27 spent for Paul’s clothing in the same time frame.
Petitioner states that it expended $160.64 per day in 1987/ 1988 for the care of Paul at its South Farmingdale facility. Attached to the petition is a letter from petitioner’s Albany office giving a breakdown of the cost for each item or category of service provided. The breakdown represents items of expense for which petitioner receives reimbursement under the Medicaid program, and covers the costs incurred for administrative personnel service, staff training and recruitment, food, telephone, medical, clinical, resident managers and workers, cook and household help, fringe benefits, depreciation of building and equipment and utilities.
*124 Although petitioner alleges a portion of its expenditures represent "comforts and luxuries” supplied to Paul within the purview of the trust instrument, no claim is made in the petition that any expense was incurred for Paul’s clothing though it would appear that clothing is included in the care provided by the State. The question of clothing, however, is not, as the guardian ad litem reports, an issue raised by the parties. Concededly, none of the expenditures listed fall into the category of luxuries. While the furnishing of food and shelter is a comfort to the recipient, the court does not find from a reading of the instrument and an examination of the context in which it was executed that the testatrix contemplated that the payment of expenses associated with room and board was the kind of comfort she intended would be paid from the income of the trust.
The intention of the testatrix is to be ascertained from the language of the instrument in light of the circumstances and conditions prevailing at the time of execution of the will (Matter of Carmer, 71 NY2d 781, 785-786). When the testatrix signed her will her son Paul was already residing in a State-operated facility as disclosed in the will itself. The testatrix must be deemed to have planned and designed her testamentary scheme with these factors in mind. That she did so cannot be doubted for her will expressly prohibits the invasion of the trust corpus to defray the cost of Paul’s living expenses or other routine costs for residence in a State facility. Her dominant purpose was to have the trust income applied for her son’s benefit "as long as he shall live.” Such was her intent for that is what she plainly wrote. She additionally stipulated how the income was to be applied by specifying it shall be "expended for clothing, comforts and luxuries for my son.” The court accordingly concurs in the conclusion reached by respondent and the guardian ad litem that the phrase "clothing, comforts and luxuries” was intended by the testatrix to cover personal and luxury items not supplied by the State under the umbrella of care it provides on a regular basis. (Cf., Matter of Maul v Fitzgerald, 78 AD2d 706.)
Though the direction of the testatrix that the income be spent for Paul’s benefit is unmistakable, the court does not imply that the testatrix thereby intended to deprive the trustee of all discretion. What are the reasonable requirements of Paul for clothing, comforts and luxuries certainly presents a question that must be in the discretion of the trustee as the testatrix cannot be deemed to have authorized *125 unlimited or unnecessary expenditures. A surplus might occur in one year. Income may be accumulated over a period of time to meet a large expenditure contemplated to be made in the future. Income in another year may be insufficient to meet Paul’s reasonable requirements. Resolution of these questions rests in the trustee’s discretion. However, the trustee with respect to any surplus income is the custodian of the fund for the income beneficiary or his estate (cf., Matter of Lazarus, 54 Misc 2d 593; In re Wieler’s Will, 128 NYS2d 465).
This construction of decedent’s will leads to the conclusion that the trustee’s decision not to apply income in payment of the daily care provided by petitioner does not constitute an abuse of discretion (cf., Matter of Hoelzer v Blum, 93 AD2d 605; Matter of Oddo v Blum, 83 AD2d 868). This determination, however, is based on the particular facts and circumstances of this proceeding. In this connection, the court observes that respondent’s counsel has strenuously urged the court to find that the principle announced in the Escher case (Matter of Escher, 94 Misc 2d 952, affd 75 AD2d 531, affd 52 NY2d 1006, supra) with respect to a trustee’s application of the trust corpus is applicable as well to income. The guardian ad litem expresses the view that this proceeding is an inappropriate springboard for such a declaration of public policy. Consideration of that issue is unnecessary in view of the court’s determination that the trustee has properly refused to apply the income toward payment of petitioner’s charges.
In view of the decision reached, the court similarly need not consider petitioner’s suggestion that a much greater income could be realized by a sale of the residence occupied by the trustee. The court, however, does direct the trustee to file an account of her stewardship and to explain the makeup and amount of the funds in the so-called Paul Kemp luxury fund. Though this application is not brought to reach surplus income where no direction is given for accumulation as provided in EPTL 7-3.4, this determination is without prejudice to the pursuit of such course should petitioner deem it advisable, and the trustee is therefore directed to cite petitioner upon filing her accounting.
The fee of the guardian ad litem shall be fixed in the decree to be settled hereon which shall also direct the filing of an accounting and that the trustee proceed to judicially settle same by March 20, 1992.