**TRUST COMPANY OF OKLAHOMA, guardian of the estate of Ellen Lea Barker, a minor child, Appellee,**

v.

**STATE of Oklahoma, ex rel. DEPARTMENT OF HUMAN SERVICES, Appellant.**

No. 82290.

Supreme Court of Oklahoma.

Feb. 21, 1995.

Charles Lee Waters, Gen. Counsel, Oklahoma Dept. of Human Services, Howard J. Pallotta, Asst. Gen. Counsel, Oklahoma City, for appellant.

Roland Tague, Oklahoma City, for appellee.

Lee Holmes, Oklahoma City, Susan G. Haines, John T. Combs, Kathleen A. Negri, Denver, CO, for amicus curiae, The Nat. Academy of Elder Law Attys., Inc.

KAUGER, Vice Chief Justice:

The issue of first impression presented is whether disbursements from a trust which is not an available resource for medical eligibility purposes may be income which must be considered in the certification process.[1] We must also determine whether, under the facts presented, Human Services was estopped from considering distributions from the Barker trust in the certification procedure. We find that: 1) disbursement from a trust which is not an available resource may be income for medical eligibility purposes under 42 U.S.C. § 1396a(a)(17)(B) (Supp.1993)[2] if they are utilized to meet basic needs of food, clothing and shelter and under the Oklahoma Administrative Code (OAC) § 340:35-5-42 (1/1/93)[3] if they do not qualify as income disregards;[4] and 2) the facts presented will not support the application of the estoppel doctrine against a state agency.

## FACTS

The facts surrounding the creation of the instant trust are outlined in *Trust Co. of Oklahoma v. State ex rel. Dept. of Human Serv.*, 825 P.2d 1295, 1304 (Okla.1991), *cert. denied*, — U.S. ——, 113 S.Ct. 300, 121 L.Ed.2d 224 (1992) (*Trust I*). In *Trust I*, we determined that the Barker trust, created for the primary purpose of providing nonmedical support and containing a provision allowing the trustee discretion to provide medical care if the beneficiary ceased to qualify for medical assistance programs, was not an available resource for medical assistance eligibility purposes. The appellant, Department of Human Services (Human Services), was ordered to reinstate the medical assistance case of Ellen Lea Barker (Barker/beneficiary/minor child). Reinstatement was subject to recertification as provided by the applicable program regulations.

During the recertification process, the appellee, Trust Company of Oklahoma (Trust Company/trustee), provided Human Services with receipts for medical bills paid by the trust, federal identification numbers for medical providers, evidence of medicaid contracts for medical providers and completed certification applications. Human Services discovered Barker had received trust disbursements. Human Services requested documentation of these payments. The Trust Company refused to provide this information asserting that distributions were not relevant

1. The certification process is the procedure an individual seeking medical aid must complete to determine eligibility for benefits. It begins with an intake interview where the responsibilities of Human Services and of the applicant are discussed. OAC § 340:65-3-3 (4/30/93). The process includes a determination of financial need based on the applicant's available income and resources. 42 U.S.C. § 1396a (Supp.1993), see note 2, infra.

2. Title 42 U.S.C. § 1396a (Supp.1993) provides in pertinent part:

    "(a) Contents
    A state plan for medical assistance must—
    ... (17) ... (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and ... as would be disregarded (or set aside for future needs) in determining his eligibility for such aid, assistance or benefits ..."

3. OAC § 340:35-5-42 (1/1/93) provides in pertinent part:

    "**Determination of countable income for individuals categorically related to aged, blind and disabled**
    (a) **General.** The term income is defined as that gross gain or gross recurrent benefit which is derived from labor, business, property, retirement and other benefits, and many other forms which can be counted on as currently available for use on a regular basis. When an individual's income is reduced due to recoupment of an overpayment or garnishment, the gross amount before the recoupment or garnishment is counted as income...."

4. Human Services recognizes that some trust disbursements might qualify as "income disregards"—payments that are disregarded in determining countable income. Human Services' reply brief provides at pp. 3-4:

    "... There are also certain forms of payments that are not countable as income ... Currently, OAC 340:35-5-42(b), *Income disregards*, provides that twenty-three (23) different forms of payments are disregarded in determining countable income for Title XIX eligibility...."
    See also, discussion pp. 1346-1347, infra.

to determining income for certification purposes.

On June 21, 1993, the Trust Company filed a motion to enforce judgment in the district court requesting reimbursement to the trust for qualified medical expenses and ordering reinstatement for medical assistance. Human Services responded to the motion on July 6. It opposed the motion arguing that trust disbursements to Barker and her family may constitute available income for certification purposes. The trial judge, Charles H. Headrick, found that disbursements from the trust for non-medical purposes were not relevant in determining eligibility for medical assistance. He ordered Human Services to certify Barker for benefits within fifteen days of the order.[5] Human Services appealed. On February 11, 1994, the court accepted the brief of the amicus curiae, National Academy of Elder Law Attorneys, Inc. (National Academy), for filing with the consent of the parties. The cause was submitted to the Court on May 25, 1994, to consider: 1) the first impression question of whether disbursements from a trust which is not an available resource for medical eligibility purposes may

be income which must be considered in the certification process; and 2) whether, under the facts presented, Human Services was estopped from considering distributions from the Barker trust in the certification procedure.

### I.

### DISBURSEMENTS FROM A TRUST WHICH IS NOT AN AVAILABLE RESOURCE MAY BE INCOME FOR MEDICAL ELIGIBILITY PURPOSES UNDER 42 U.S.C. § 1396a(a)(17)(B) (Supp.1993) IF THEY ARE UTILIZED TO MEET BASIC NEEDS OF FOOD, CLOTHING AND SHELTER AND UNDER THE OKLAHOMA ADMINISTRATIVE CODE (OAC) § 340:35–5–42 (1/1/93) IF THEY DO NOT QUALIFY AS INCOME DISREGARDS.

Human Services contends that disbursements made from the Barker trust may constitute income for the purpose of determining medical eligibility.[6] However, it recognizes

5. The trial court's order relating to the Trust Company's motion to enforce the judgment and brief in support provides in pertinent part:
"... The Court further finds that disbursements from the trust for non-medical purposes are not relevant in determining eligibility for medical assistance for Ellen Lea Barker.
**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** Ellen Lea Barker has performed all of the tasks necessary to determine eligibility to receive medical assistance from June, 1987, through December 31, 1992, and that the Defendant shall within 15 days make that determination based on the information it has...." (Emphasis in original.)
A cursory reading might lead one to think that Human Services had the option to deny benefits, but a careful evaluation of the language indicates that the trial judge found: 1) that any payments made for non-medical purposes were irrelevant; and 2) that he ordered Human Services to certify the beneficiary for benefits within 15 days. This analysis is supported by the docket sheets found on pages 32 and 33 of the record. They provide in pertinent part:
"Plaintiff appears by attorney, Roland Tague. Defendant appears by counsel. Argument is conducted. Plaintiffs Motion to Enforce Judgment is sustained."

6. Human Services cites to the Omnibus Budget Reconciliation Act of 1993 (the Act), P.L. 103–66,

42 U.S.C. § 1396 et seq., as evidence that Congress intended for all disbursements from any trust created on or after August 11, 1993, to be treated as income for medical eligibility purposes. Although it recognizes that the Barker trust does not fall within the confines of the Act, Human Services argues that in the future all payments from a trust will constitute income. This argument is unpersuasive. 42 U.S.C. § 1396p(d)(4) provides:
"This subsection shall not apply to any of the following trusts:
(A) A trust containing the assets of an individual under age 65 who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter.
(B) A trust established in a State for the benefit of an individual if—
(i) the trust is composed only of pension, Social Security, and other income to the individual (and accumulated income in the trust),
(ii) the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical

that some disbursals may constitute income disregards within the meaning of OAC § 350:35–5–42 (1/1/93).[7] If so, they will not affect Barker's eligibility for medical services. The Trust Company and the National Academy insist that payments from the trust are not income under the relevant statutes and regulations. We find that they may be.

The Trust Company asserts that any disbursements from the trust are not income within the meaning of the Oklahoma Administrative Code (OAC) § 340:35–5–42(a) (1/1/93) which defines income as:

"... that gross gain or gross recurrent benefit which is derived from labor, business, property, retirement and other benefits, and many other forms which can be counted on as currently available for use on a regular basis...."

Its argument is that disbursements from the trust, made at the discretion of the trustee, cannot be considered as being recurrent or available on a regular basis within the meaning of § 340:35–5–42(a). However, OAC

§ 340:35–5–42(c)(3)(C) (5/4/92) related to the determination of income addresses the situation where lump sum payments are received. It provides in pertinent part:

"... Any income received in a lump sum covering a period of more than one month, whether received on a recurring or nonrecurring basis, is considered as income in the month it is received ... Such lump sum payments may include, but are not limited to, accumulation of wages, retroactive OASDI, VA benefits, Workers' Compensation, bonus lease payments and annual rentals from land and/or minerals.... Changing a resource from one form to another, such as converting personal property to cash, is not considered a lump sum payment."[8] (Emphasis provided.)

■■■■ Rules and regulations enacted by administrative agencies pursuant to delegated powers have the force and effect of law.[9] The same interpretive rules apply to these rules and regulations as do in statutory con-

---

assistance paid on behalf of the individual under a State plan under this subchapter, and (iii) the State makes medical assistance available to individuals described in section 1396a(10)(A)(ii)(V) of this title, but does not make such assistance available to individuals for nursing facility services under section 1396a(a)(10)(C) of this title.
(C) A trust containing the assets of an individual who is disabled (as defined in section 1382c(a)(3) of this title) that meets the following conditions:
(i) The trust is established and managed by a nonprofit association.
(ii) A separate account is maintained for each beneficiary of the trust, but, for purposes of investment and management of funds, the trust pools these accounts.
(iii) Accounts in the trust are established solely for the benefit of individuals who are disabled (as defined in section 1382c(a)(3) of this title) by the parent, grandparent, or legal guardian of such individuals, by such individuals, or by a court.
(iv) To the extent that amounts remaining in the beneficiary's account upon the death of the beneficiary are not retained by the trust, the trust pays to the State from such remaining amounts in the account an amount equal to the total amount of medical assistance paid on behalf of the beneficiary under the State plan under this subchapter."
In *Matter of Moretti,* 159 Misc.2d 654, 606 N.Y.S.2d 543, 546–47 (1993), the New York court

allowed a trust to be created to conform to the 1993 Act. A provision in the trust provided that the corpus and the income of the trust could be used during the beneficiary's lifetime with full trustee discretion for the benefit of the disabled individual. However, a provision was added providing that:
"This trust shall terminate upon the death of Michael Moretti and the State shall be reimbursed for medical assistance provided to Michael Moretti during his lifetime, as consistent with federal and state law."
The court issued an order establishing the supplemental needs trust.

7. See discussion, note 4, supra.

8. The Trust Company relies upon the last quoted sentence of OAC § 340:35–5–42(c)(3)(C) (5/4/92) for the proposition that payments from the trust cannot constitute income because the regulation disregards consideration of changes in resources. This argument is unpersuasive. The issue presented here concerns payments from the trust as income. We have previously determined that the trust itself is not an available resource. *Trust Co. of Oklahoma v. State ex rel. Dept. of Human Serv.,* 825 P.2d 1295, 1304 (Okla.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 300, 121 L.Ed.2d 224 (1992).

9. *Toxic Waste Impact Group, Inc. v. Leavitt,* 755 P.2d 626, 630 (Okla.1988); *Texas Oklahoma Express v. Sorenson,* 652 P.2d 285, 287 (Okla.1982).

struction.[10]  Therefore, if possible, subsections (a) and (c) of § 340:35–5–42 must be reconciled and both portions given effect.[11] The Trust company would assign a meaning to a "recurrent benefit ... available on a regular basis" requiring income to be a payment received on a regular schedule, i.e., weekly, monthly, bi-monthly, etc.  However, it is clear under § 340:35–5–42(c)(3)(C) that some lump sum payments will constitute income within the meaning of § 340:35–5–42(a) although the recipient may not receive the income on a monthly or periodic basis.  Additionally, § 340:35–5–42(c)(3)(F) deals specifically with the treatment of inconsequential or irregular income.  It provides that the irregular receipt of income in the amount of $10.00 or less per month or $30.00 or less per quarter will be disregarded.[12]  Reading these statutes as a whole, it is clear that disbursements made from the Barker trust, although timed irregularly, may constitute income within the meaning of the Oklahoma Administrative Code.

In *Trust I,* we looked to federal regulations promulgated by the Secretary of Health and Human Services for guidance in determining whether the Barker trust was an available resource within the meaning of Medicaid.[13]  The National Academy urges us to consider the same regulations relating to Supplemental Security Income for the Aged, Blind, and Disabled (SSI), 42 U.S.C. § 1381 et seq.[14]  Federal regulations defining income for SSI provide that income is anything received in cash or in kind that can be used to meet needs for food, clothing and shelter.[15] The National Academy insists that any trust payments will not fall within the meaning of income under these regulations because the Barker trust was established to provide supplemental comforts rather than basic needs.

**10.**  See, *Mayfield v. H.B. Oil & Gas,* 745 P.2d 732, 735 (Okla.1987).

**11.**  *Cowart v. Piper Aircraft Corp.,* 665 P.2d 315, 317 (Okla.1983); *Earnest, Inc. v. LeGrand,* 621 P.2d 1148, 1151 (Okla.1981).

**12.**  OAC 340:35–5–42(c)(3)(F) (5/4/92) provides in pertinent part:

"**Inconsequential or irregular income.**  Inconsequential or irregular receipt of income in the amount of $10 or less per month or $30 or less per quarter is disregarded...."

**13.**  *Trust Co. of Oklahoma v. State ex rel. Dept. of Human Serv.,* see note 8 at 1301, supra.

**14.**  In 1972, Congress replaced four assistance programs with a new program called Supplemental Security Income for the Aged, Blind, and Disabled (SSI), 42 U.S.C. § 1381 et seq.  Generally, the new SSI eligibility standards were more generous than some of the previously established state criteria.  To avoid the withdrawal of states from the program, Congress included § 209(b) in SSI.  Under the § 209(b) option, states could elect to provide Medicaid assistance only to those individuals who would have been eligible under the state Medicaid plan in effect on January 1, 1972.  States thus became either "SSI States" or "§ 209(b)" states.  *Schweiker v. Gray Panthers,* 453 U.S. 34, 37, 101 S.Ct. 2633, 2637, 69 L.Ed.2d 460 (1981); *Mowbray v. Kozlowski,* 914 F.2d 593, 595–96 (1990).  Human Services has provided no evidence of what standards were in effect in Oklahoma in 1972.  Instead, it argues that SSI regulations should not be considered as persuasive in determining the meaning of "income" in Oklahoma because it is a § 209(b) state rather than an SSI state.  This statement is made without citation of authority.  [Assignments of error not supported with citations of authority will be treated as waived.  *Peters v. Golden Oil Co.,* 600 P.2d 330–331 (Okla.1979).]  The Human Services' reply brief provides at p. 7:

"Since Oklahoma is a '§ 209(b) (sic) State, the SSI regulations at 20 C.F.R. § 416.1100 et seq. governing 'income' do not apply in Oklahoma.  Eligibility for Medicaid is instead governed by the DHS Manual or the OAC."

This argument is unpersuasive.  In *Schweiker,* this note, supra, the United States Supreme Court recognizes that the Secretary promulgates regulations governing the administration of Medicaid benefits in both SSI states and in § 209(b) states.  Additionally, 42 U.S.C. § 1396a (Supp. 1993) provides in pertinent part:

"**(a) Contents**

A state plan for medical assistance must—

... (17) ... (B) provide for the taking into account only such income and resources as are, **as determined in accordance with standards prescribed by the Secretary,** available to the applicant or recipient ..."  (Emphasis provided.)

**15.**  20 C.F.R. § 416.1102 (1994) provides in pertinent part:

"Income is anything you receive in cash or in kind that you can use to meet your needs for food, clothing, and shelter...."

20 C.F.R. § 416.1103 (1994) provides in pertinent part:

"Some things you receive are not income because you cannot use them as food, cloth-

The trust agreement provides that its primary purpose:

> "... is to furnish Ellen, during her lifetime, with the nonmedical equipment, care, education, training, rehabilitation, entertainment, transportation, or assistance which she will need to assure her of as natural and pleasant a life as is possible in her condition...."

The issue of whether this provision would prohibit the trustees, under the proper circumstances, from making disbursals to Barker for basic support is not presented; and it is not determined. Instead, we note that no disclosure has been made by the trustees of what payments were made to Barker and her family.[16] On this record, we cannot hold that the disbursements do not fall within the Secretary's definition of income as something that may be used to meet the needs for food, clothing and shelter.

The Trust Company relies on *Will of Daubney*, 153 Misc.2d 120, 580 N.Y.S.2d 839, 842 (1992) for the proposition that disbursals from a trust similar to Barker's will not be considered income for medical eligibility purposes. However, a close reading of *Daubney* reveals that the issue presented involved the ability of the state to compel income payments from a trust to cover medical expenses. The New York Court found that the trustee of the trust could not be compelled to pay for medical expenses which otherwise would be covered by medical assistance. In essence, the *Daubney* court addressed the same issue presented by *Trust I*—whether a supplemental trust was an available resource within the medical eligibility statutes.

In *Trust I*, we recognized that the availability of trust assets to Barker required that the applicable state regulations conform with the Medicaid Act. Title 42 U.S.C. § 1396a(a)(17)(B) (Supp.1993)[17] provides that only income available to the applicant will be used in determining eligibility for medical assistance or benefits. We recognized in *Trust I* that Human Services regulations relating to available resources in hand and liquid resources in hand had to be assigned a definition consistent with that of available resources under the federal act.[18]

Our research does not reveal any case in which courts in sister states have determined whether the disbursements from a trust which is not an available resource for purposes of medical assistance eligibility are nevertheless available income to be considered in the application process.[19] We cited *Zeoli v. Commissioner of Social Serv.*, 179

---

> ing, or shelter, or use them to obtain food, clothing, or shelter...."

**16.** The Trust Company's brief in chief provides at p. 2:
> "... Because the Appellee contends the distributions are not relevant to determining Ellen's 'income', it has refused to provide records of payments to Ellen or to others on her behalf...."

**17.** Title 42 U.S.C. § 1396a(a)(17)(B), see note 2, supra.

**18.** DHS Manual § 1063.211 (11/1/86) provides in pertinent part:
> *"Consideration of Income for CCP Eligibility.* All available income is considered in determining CCP eligibility. Available income is defined as all income 'in hand' or under the control of the individual for the period of certification...."

DHS Manual § 1022.23 (11/1/86) provides in pertinent part:
> *"Determination of Eligibility for Title XIX Payments.* Available income and resources are those which are 'in hand' or under the control of the individual for the period of certification...."

From 1981 to March, 1986, Barker received medicaid benefits through Title XIX—Grants to States for Medical Assistance Programs, 42 U.S.C. § 1396 et seq. (1984). Medical benefits were provided through the Oklahoma Crippled Children's Act (Crippled Children's Act/Program), 10 O.S.1981 § 175.1, et seq. from March 1986 until June 30, 1987.

**19.** In *Miller v. Ibarra*, 746 F.Supp. 19, 27 (1990), the federal court found that income from supplemental trusts which were disbursed at a level $20.00 below the applicable Medicaid maximum income eligibility level would not be considered available resources. The New Mexico appellate court held in *Kegel v. State*, 113 N.M. 646, 651, 830 P.2d 563, 568 (1992) held that the state could not terminate benefits on the basis of the existence of a trust if it did not qualify as a medicaid qualifying trust. The court noted that disbursals of $2,100 per month had been paid to the beneficiary. However, it did not address the effect of these payments on the receipt of state-supported benefits. Kansas has held income from a trust in which the trustee must disburse the income is an available resource under eligibility standards. *State ex rel. Secretary of Social & Rehabilitation Serv. v. Jackson*, 249 Kan. 635, 822 P.2d 1033, 1040 (1991).

Conn. 83, 425 A.2d 553 (1979) in *Trust I* for its holding that assets of an irrevocable trust were not an available resource for medical eligibility purposes within the meaning of 42 U.S.C. § 1396a(a)(17)(B). In the discussion of the irrevocable trust, the Connecticut Court stated that assets held in trust should be considered available only to the extent they are distributed to a beneficiary.[20] The Trust Company has admitted making distributions to trust beneficiaries. We find that disbursements from a trust that is not an available resource may be income for medical eligibility purposes under 42 U.S.C. § 1396a(a)(17)(B) (Supp.1993)[21] if they are utilized to meet basic needs of food, clothing and shelter and under the Oklahoma Administrative Code (OAC) § 340:35–5–42 (1/1/93) if they do not qualify as income disregards.[22]

## II.

## THE FACTS PRESENTED DO NOT SUPPORT THE APPLICATION OF THE ESTOPPEL DOCTRINE AGAINST A STATE AGENCY.

The Trust Company and the National Academy insist that Human Services is estopped from reviewing distributions from the Barker trust by the principle of estoppel. The Trust Company cites *Trust I* for the proposition that Human Services released all future interest in the Barker trust when the trust was formed by court order. Human Services points out that we clearly expressed in *Trust I* that the estoppel issue was not considered; and it argues that the facts presented will not support application of the estoppel doctrine against a state agency. We agree on both counts.

At p. 1298 of *Trust I*, we indicated that the Trust Company requested a release of all future interest in the trust estate. A $200,-000.00 payment was made to Human Services "in full and complete satisfaction and accord as to any lienable interest held by said Department in the funds arising from the litigation in Arizona." In footnote number 8 of the opinion, we stated:

> "Because the Barker trust fund is not an available resource for medical eligibility purposes, we need not determine whether the facts and circumstances . . . implicate a prevailing public interest which will except it from the general rule precluding the use of estoppel against the government."

This Court did not consider the estoppel issue in *Trust I*.

■ The Trust Company recognizes the general rule that estoppel applies against the state, a political subdivision or an agency only when its interposition would further some principle of public policy or interest.[23] However, the Trust Company makes no public policy argument for the application of estoppel in the instant cause. The National Academy asserts that the public interest in continuity of medical assistance benefits would be furthered by applying the doctrine of estoppel to prevent termination of benefits. This argument rests upon an assertion that failure to apply the doctrine would encourage Human Services to deny benefits and thereby force the trustee to provide benefits for basic needs. Payments made for food, shelter and clothing would then be available income within the medical eligibility rules and regulations.[24]

■ The record is devoid of any evidence that Human Services has not reinstated Barker's benefits as an attempt to force the trustees to make payments to Barker. In *Trust I*, we noted that a tension exists between the provision of state services and the use of private funds for medical expenses— "(e)conomic reality demonstrates that the source of funds for public assistance pro-

---

**20.** See also, *Forsyth v. Rowe*, 226 Conn. 818, 629 A.2d 379, 383 (1993); *Zeoli v. Commissioner of Social Serv.*, 179 Conn. 83, 425 A.2d 553 (1979).

**21.** Title 42 U.S.C. § 1396a(a)(17)(B) (Supp. 1993), see note 2, supra.

**22.** Oklahoma Administrative Code (OAC) § 340:35–5–42 (1/1/93), see note 3, supra.

**23.** *Spencer Dev. Co. v. Independent School Dist. No. I–89*, 741 P.2d 477, 481 (Okla.1987); *Burdick v. Independent School Dist. No. 52*, 702 P.2d 48, 53 (Okla.1985).

**24.** See, discussion pp. 1346–1348, supra; 20 C.F.R. § 416.1102 (1994), note 15, supra; 20 C.F.R. § 416.1103 (1994), note 15, supra.

grams is finite." [25] Congress has eased the tension between the provision of medical assistance through the public sector and from private funds by basing eligibility on actual availability of income and resources. An examination of the actual availability of income or resources for assistance serves to prevent tangential sources of income from being imputed to the applicant.[26] Therefore, in the absence of (a) any public policy or public interest arguments by the Trust Company and (b) any evidence that Human Services' actions were intended to force disbursals from the trust estate, we find that the facts presented will not support the application of estoppel against Human Services.

## CONCLUSION

Human Services is required by federal law to consider income available to an applicant for medical eligibility assistance.[27] It does not argue that all disbursals from the Barker trust necessarily constitute income within the meaning of its rules and regulations.[28] Instead, it seeks the opportunity to examine the distributions made to determine whether they constitute available income to Barker for medical eligibility purposes. Disbursements made from the Barker trust may constitute income within the meaning of 42 U.S.C. § 1396a(a)(17)(B) (Supp.1993) [29] if they are utilized to meet basic needs of food, clothing and shelter and under the Oklahoma Administrative Code (OAC) § 340:35–5–42 (1/1/93) [30] if they do not qualify as income disregards. Because under these facts, application of the doctrine of estoppel against Human Services does not serve the public interest or policy, the cause is remanded for the certification process to continue under the guidelines of this opinion. We emphasize that just as we did not decide the estoppel issue in *Trust I*, we express no view here as

to whether the disbursals made to the beneficiaries in the instant cause from the Barker trust constitute income for the purpose of medical eligibility qualifications.

## REVERSED AND REMANDED.

ALMA WILSON, C.J., KAUGER, V.C.J., and HODGES, LAVENDER, SUMMERS and WATT, JJ., concur.

HARGRAVE, J., concurs in result.

SIMMS, J., with whom OPALA, J., joins, dissenting.

SIMMS, Justice, dissenting:

I cannot join the majority in passing on the correctness of the district court's ruling on trust disbursements for non-medical purposes, as I do not believe the order reviewed is appealable.

In the order, the district judge remanded the matter to the Department of Human Services for the agency's determination within 15 days of Ellen Barker's eligibility to receive medical assistance from June, 1987 through December, 1992. In the absence of a determination of her eligibility, we do not have a judgment to review for a judgment is the final determination of the rights of the parties in an action. 12 O.S.1991, § 681, *Eason Oil Co. v. Howard Engineering*, 755 P.2d 669 (Okl.1988); *Oklahomans for Life, Inc. v. State Fair of Okl.*, 634 P.2d 704 (Okl.1981); *Reams v. Tulsa Cable Television, Inc.*, 604 P.2d 373 (Okl.1979); *Hurley v. Hurley*, 191 Okl. 194, 127 P.2d 147 (1942). This is a prejudgment interlocutory order with no final characteristic or effect. It leaves the parties before the court with directions to return to the administrative agency for its adjudication of the issue in controversy in a subsequent proceeding. *Reid v. Phillips Pe-*

25. *Trust Co. of Oklahoma v. State ex rel. Dept. of Human Serv.*, note 8 at 1304, supra.

26. Id.; *Clark v. Commissioner of Income Maintenance*, 209 Conn. 390, 551 A.2d 729, 736 (1988).

27. Title 42 U.S.C. § 1396a(a)(17)(B) (Supp. 1993), see note 2, supra.

28. Human Services' brief in chief provides at p. 7:

"... Note that DHS is unable to decide whether the payments should be disregarded or not because it does not know the reasoning for the payments.... For example, one income disregard allows expenditures for education...."

29. Title 42 U.S.C. § 1396a(a)(17)(B) (Supp. 1993), see note 2, supra.

30. Oklahoma Administrative Code (OAC) § 340:35–5–42 (1/1/93), see note 3, supra.

*troleum Company,* 531 P.2d 340 (Okl.1975); *Hughes Motor Co. v. Warner,* 187 Okl. 255, 102 P.2d 594 (1940).

The remand is an authorized intermediate step under 75 O.S.1991, § 322(a). It does not, however, fall within the class of interlocutory orders appealable by right or an order which may be certified for immediate review. 12 O.S.1991, §§ 952, 993 and Rules on Perfecting a Civil Appeal, 12 O.S.1991, Ch. 15, App. 2. Neither may it be deemed a final order. 12 O.S.1991, § 993; 75 O.S.1991, § 323; *Lawson v. Boston Chrysler Ply. & Dodge, Inc.,* 625 P.2d 1258 (Okl.1981).

An appeal does not lie to the Supreme Court from an interlocutory order made during the pendency of an action which leaves the parties in court to have the issues tried on the merits, unless the appeal is expressly authorized by statute. *Weaver v. Fourth Nat. Bank of Tulsa,* 263 P.2d 194 (1953); *Dennis v. Lathrop,* 204 Okl. 684, 233 P.2d 969 (1951).

The majority implies that the order took on a quality of finality because the trial court's ruling on the relevance of trust disbursements made the result of the Department's determination of eligibility predictable. Predictability of a subsequent order does not impart finality to a non-final order, however. Even when the court's own judgment is at issue, a judge's announcement of what judgment might be rendered under conditions yet to occur is not a judgment. *Lawrence v. Cleveland County Home Loan Authority,* 626 P.2d 314 (Okl.1981); *Porter v. Tayer,* 385 P.2d 808 (Okl.1963); *Foreman v. Riley,* 88 Okl. 75, 211 P. 495 (1923).

Findings of the court or statements of its opinions or comments do not constitute a judgment, but are only expressions by the court as to what its judgment should be. A judgment is the final determination of the rights of the parties and is distinct from the findings of the court. *Tillman v. Tillman,* 199 Okl. 130, 184 P.2d 784 (1947).

This appeal is premature. It presents no decision or final order for this Court to review and should be dismissed.

I am authorized to state that Justice OPALA joins with me in the views expressed herein.