OPINION OF THE COURT
Renee R. Roth, S.
The issue in this contested application for invasion of the corpus of a testamentary trust (EPTL 7-1.6 [b]) is whether a remainderman, who is alleged to be a creditor, is entitled to be reimbursed for nursing home expenses he advanced on behalf of the income beneficiary.
Testator, Jack Bross, died on August 29, 1974 leaving a will under which he created the trust at issue for the life income benefit of his wife Sylvia with remainder to their children, Jessica Rosner and Richard Bross. Under the instrument, the trustee was directed to pay for the comfort and maintenance of Sylvia during her life any income not exceeding the sum of $15,000 per year but was not given authority to invade the corpus.
The background of this application is briefly stated. In February 1993, Mrs. Bross suffered a severe stroke and was hospitalized twice. In June of the same year, she was placed in a nursing home. Her condition deteriorated rapidly to the extent that she became unable to walk, talk or feed herself. Her doctor advised that Mrs. Bross required 24-hour attention provided by private aides. Although all hospital and nursing home expenses were paid by Medicaid, the cost of the aides was not covered. Richard advanced the payments for the nurses aides and tried to work out with his sister a plan to utilize the trust corpus (then valued at approximately $51,000) for the expenses of their mother’s care not covered by Medicaid. The trustee, consulted at the end of July 1993, agreed to terminate the small trust (which had a nominal annual income of $3,000) in order to pay for these expenses if the two siblings signed releases. In January 1994, after protracted negotiations between their attorneys, the siblings came close to an agreement but failed to finalize it. Richard commenced this proceeding in June 1994 after all his attempts to find an out-of-court solution acceptable to his sister Jessica were unsuccessful. Petitioner requested the court to authorize allowances from the trust corpus towards meeting the medical needs of the income bene *39 ficiary until the depletion of the trust funds. As further relief, Richard also asked to be reimbursed for the payments he had advanced for the income beneficiary’s care in the sum of $37,290 from June 24, 1993 to May 20, 1994 and for legal fees in the sum of $7,500 in connection with this proceeding.
Jessica opposed the application contending, inter alia, that: (1) Richard, being a creditor, lacks standing to seek construction of the testamentary trust; (2) invasion of the trust corpus is contrary to testator’s intent; (3) reimbursement of the expenses voluntarily paid by Richard would virtually exhaust the trust; (4) the care of residents even by nurses aides is the obligation of the nursing home; and (5) allowances from the trust corpus might affect Mrs. Bross’ eligibility for Medicaid or cause a lien for refund of public assistance.
After several conferences with the court, a settlement was almost reached but while further efforts were being made, the income beneficiary died. Thereafter, Jessica moved to dismiss the petition as moot and requested distribution of her one-half share of the trust remainder.
We turn first to the issue of whether EPTL 7-1.6 can be used to recover expenditures made on behalf of a trust income beneficiary.
EPTL 7-1.6 governs invasion of principal on behalf of an income beneficiary of a trust. In its present form, it represents the Legislature’s clear intent to liberalize the circumstances under which principal may be applied for the support of a needy income beneficiary (see, Note, 4th Report of Temp St Commn on Estates, 1965 NY Legis Doc No. 19, Appendix 16, at 183). Historically, a court could not order an invasion of principal " '[n]o matter how dire the need and how inhumane the result of the inability to invade’ ” (2d Report of Temp St Commn on Estates, 1963 NY Legis Doc No. 19, at 479; see also, Turano, Practice Commentaries, McKinney’s Cons Laws of NY, Book 17B, EPTL 7-1.6, at 244, citing Matter of Van Hoesen, 151 Misc 617). In 1965, the Legislature remedied this problem. To provide a means by which the court could effectuate the testator’s intent under changed circumstances, section 15-a of the Personal Property Law and section 103-a of the Real Property Law were enacted (L 1965, ch 699, §§ 2, 3), which permitted the court to authorize the trustee to invade principal to the extent that there was a deficiency of income for the support of the beneficiary. These statutes were combined in 1966 in EPTL 7-1.6 (L 1966, ch 952) and form our present law.
Under subdivision (a) of EPTL 7-1.6, a court may authorize invasion of a trust where the needy income beneficiary is inde *40 feasibly entitled to the principal or, if not so entitled, where all the remaindermen are competent and consent. Clearly, subdivision (a) does not apply here.
Subdivision (b) of EPTL 7-1.6, which governs trusts created after 1966, is applicable here. It authorizes the court in its discretion to "make an allowance from principal to any income beneficiary whose support * * * is not sufficiently provided for” (emphasis added). It is observed that, as Jessica contends, a creditor of an income beneficiary may not, as a rule, use trust principal as a resource to recover his claim (SCPA 103 [39]; 1420 [1]; see, Matter of Daubney, 153 Misc 2d 120, 121; Matter of Ross, 96 Misc 2d 463). But Richard is not a creditor in the usual sense. Even though he seeks reimbursement, Richard’s application was brought substantially and primarily as a person concerned with the welfare of an incapacitated beneficiary. As such, petitioner’s standing is not questionable (see, e.g., Mental Hygiene Law § 81.06 [a] [6]; SCPA 1751). There is nothing in the law that requires this court to reject a claim for money advanced to pay for critical services for an income beneficiary before the approval of the trustee or the court can be obtained. Petitioner should not be penalized for advancing funds when they were needed instead of waiting until an application pursuant to EPTL 7-1.6 could be granted by which time it might have been too late to provide the necessities that his mother required. The appropriate test to be used now is whether the court would have granted the application at the time Richard advanced the funds.
Thus, the issue is whether the application of principal to the income beneficiary is permitted under testator’s will and the governing statute. As mentioned, EPTL 7-1.6 (b) empowers the court in its discretion to make allowances from principal to an income beneficiary whose support is not sufficiently provided for, whether or not such beneficiary is entitled to any part thereof, upon finding that such allowances effectuate the intention of the creator. However, such allowance may be authorized only if there is no contrary provision in the disposing instrument. Mr. Bross’ will does not contain such a provision. To the contrary, the will expresses testator’s intent "to maintain my wife in the same degree of comfort and support as that enjoyed by her immediately prior to my death” (Article fourth). It is undisputed that the services of the nurses aides were absolutely necessary for the welfare of Mrs. Bross. It is thus reasonable to assume that testator intended, at the very least, that she be provided with the very basic necessities of life.
*41 Based on the foregoing, the court concludes that the trust principal was available for the support and comfort of the income beneficiary. However, since the parties do not agree on the necessity for certain services paid by Richard and on the amount of his claim, the matter is referred to the Law Department for a hearing.